[No. 5707.]

Fischbach v. Garrison Milling Company.

1. **Sale or Bailment**—A transaction examined and held to be a sale.—(31-33)

2. **Custom—Effect**—A general custom prevailing in an agricultural community that one sending grain to an elevator, for sale, is to receive the market price of the date, is sufficient of itself to determine the price, though none is specifically mentioned.—(32)

3. **Knowledge of Custom—Presumption**—It seems that a farmer is inferred to have knowledge of a general custom in the community where he resides, that the owner of grain sending it to an elevator for sale is to receive the market price of the day. —(32)

4. **Chattel Mortgage—Unrecorded**—One who buys chattels in good faith is not affected by an unrecorded mortgage of which he has, at the time of the purchase, no notice.—(33)

5. **Pleading and Evidence**—Plaintiff recovers upon the cause of action set forth in his complaint and not upon a different cause of action.—(31)

*Appeal from Rio Grande District Court*—Hon. Chas. C. Holbrook, Judge.

Mr. C. M. Corlett, for appellant.

Mr. Jas. P. Veerkamp, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

Action by plaintiff Fischbach, against The Garrison Milling & Elevator Company, for the conversion of wheat. Plaintiff's rights, if any, are such only as he acquired as a mortgagee by a chattel mort-

gage from R. M. Phillips, covering this and other property, by the terms of which, though unrecorded, plaintiff became entitled to the possession of the wheat upon default of the mortgagor. The defendant company claims to be a *bona fide* purchaser for value of the wheat, from the mortgagor, without knowledge at the time of purchase of the existence of the mortgage. On the first trial, plaintiff was non-suited, and judgment went for defendant. Upon plaintiff's appeal to the court of appeals (*Fischback v. Garrison M. & E. Co.,* 20 Col. App. 448), the judgment was reversed, upon the ground that the facts did not disclose a sale to defendant; that although the mortgage was not recorded, since it was good as between the mortgagor and mortgagee, under the facts then in evidence, defendant was merely holding the property for Phillips as a bailee, and stood in his shoes. Upon the second trial, both parties produced evidence, and the jury, under the instructions of the court, found for defendant. Upon this appeal, numerous errors are assigned and argued, and the discussion by both counsel has taken a much wider range than the issues involved, and the controlling questions, warrant. The case, as made by plaintiff in his complaint, is that Phillips, the mortgagor, caused this wheat to be threshed and delivered to defendant in violation of plaintiff's rights, defendant then knowing of the mortgage, and thereafter plaintiff made a demand on defendant for the *purchase price* of the grain, which the latter refused, and, in violation of plaintiff's rights, converted the same to its own use. In the cross-examination of plaintiff, these allegations of the complaint were called to his attention, and, in answer to defendant's counsel, he said he recognized that the grain had been purchased by defendant, since he was demanding the purchase price. This, of itself, would seem

to be conclusive that plaintiff's grievance, as set forth in his complaint, was that defendant had, with full knowledge of the existence of an unrecorded mortgage, bought the mortgaged property, and, therefore, although the transaction was a sale, the purchase was not *bona fide*. Since the evidence is all one way that defendant did not have such knowledge, plaintiff failed in his proof.

In his briefs and arguments here, however, plaintiff has departed from the case as made by the pleading, and his own testimony, and seeks to recover upon the ground that the transaction between Phillips and defendant was not a sale, but merely a bailment of the wheat.

There are two answers to this contention: One that plaintiff must recover upon the cause of action set forth in his pleading, and not upon some other. But if this determination hinges upon the character of the transaction, the uncontradicted evidence shows that it was a sale. The pertinent facts are, that the mortgagor, Phillips, caused this wheat to be threshed and delivered by his employees to defendant company at its mill and elevator. Before this time, Phillips obtained from defendant sacks in which to place the wheat, after it was threshed, and before it was transported to market, and their value was charged against Phillips on its books. Phillips gave his employees actual possession of the wheat, as his agents, with ostensible power to sell it for his benefit. He has never repudiated the sale, or questioned their acts. There is not a particle of evidence in the record that these men did not have such authority from Phillips, while the evidence tends to show that they had; nor is there any evidence that they violated his instructions. When they brought the wheat to the elevator, defendant's manager asked whose it was, and they replied that it belonged to Phillips.

He then asked if it was for sale or storage, and their answer was, it was for sale. The wheat was then put into defendant's elevator, and mingled with other wheat which it had purchased. The amount of the wheat, at the daily market price, was placed as a credit to Phillips' account, against which there then stood, as a debt, the price of the bags. Up to this time, plaintiff had made no attempt to foreclose the mortgage by taking possession of the wheat. More than two months afterwards, plaintiff, through his agent, made a demand on defendant for the purchase price of the wheat, and was refused.

We are unable to determine, from the evidence, upon what ground the demand was made—whether it was because defendant's transaction with Phillips was a bailment, or defendant had knowledge of the existence of the mortgage at the time of the purchase. Presumably it was the latter, for that is in accordance with the allegations of his complaint. The evidence is undisputed that defendant had no knowledge of the existence of the mortgage at the time it received the Phillips wheat. Certainly something was intended by Phillips when he sent his men with the wheat to defendant's mill and elevator. His agents say it was for the purpose of sale. Defendant's manager supposed it was a sale, and it is so recorded in its books of account. The circumstance that the manager did not then fix a price is not material, in view of the evidence that there is a general custom in the valley, and it is a legitimate inference that Phillips knew of it, that grain which is delivered to and received at the elevator, unless at the time it is specifically stated that it is to be stored, is sold to the mill owners at the current market price for the day. There is not a word of evidence that there was any agreement or understanding between the parties that defendant was to store this grain

and redeliver it, or an equivalent amount, to Phillips, upon demand, or otherwise account for it to the owner, except to pay the balance due on the purchase price. The transaction has none of the elements of a bailment, but, on the contrary, it has all the elements of a sale. There was an actual delivery, not for storage, but with an evident intention to convey full ownership and possession, in return for a consideration capable of being made definite and certain in accordance with the general custom prevailing in that community.

Since we have reached the conclusion that, upon the uncontradicted evidence, there was a sale of the Phillips wheat to defendant, that the purchase by the latter was *bona fide* and for value without knowledge of the existence of plaintiff's mortgage, and that defendant thereby acquired a good title thereto, free from any claim of plaintiff under his mortgage, none of the other questions involved in the case and discussed by counsel are of any moment. The judgment must therefore be affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.